UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUCINDA SHAFOR,

       Plaintiff,                                         Hon. Robert J. Jonker

v.                                                               Case No. 1:18-cv-1405

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Widow's Insurance Benefits under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of Social Security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Secretary of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence

supporting that decision. *See Brainard v. Secretary of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Secretary of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## BACKGROUND

Plaintiff was 49 years of age on her alleged disability onset date. (PageID.38). She successfully completed high school and worked previously as an administrative clerk.

(PageID.38).   Plaintiff applied for benefits on April 21, 2015, alleging that she had been disabled since January 19, 2009, due to: (1) end-stage kidney disease; (2) arthritis in her back and both knees; (3) spondyloarthropathy of the cervical spine; (4) foot pain; (5) asthma; (6) fibromyalgia; (7) adrenal masses on both kidneys; (8) anxiety; (9) depression; (10) sinusitis; (11) gout; and (12) bronchitis.   (PageID.29, 187).

Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ).   (PageID.96-140).   Following an administrative hearing, ALJ Donna Grit, in an opinion dated May 1, 2018, determined that Plaintiff did not qualify for disability benefits.   (PageID.29-39, 63-95).   The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.   (PageID.22-25).   Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

The widow of a person who died fully insured, as defined by Title II, may be entitled to Social Security widow's benefits.   *See* 20 C.F.R. § 404.335.   Plaintiff's husband died on January 9, 2009. He was fully insured when he passed.   To obtain widow's benefits, a claimant between the age of 50-60, generally must demonstrate that she became disabled within 7 years of her husband's passing.   *See, e.g., Carreon v. Massanari*, 51 Fed. Appx. 571, 572 n.1 (6th Cir., Nov. 21, 2002); *O'Day v. Commissioner of Social Security*, 2015 WL 225467 at *3 n.2 (W.D. Mich., Jan. 16, 2015).   However, this 7-year window closes if the claimant remarries, absent exceptions which the ALJ found are not present.   *See, e.g., Carreon*, 51 Fed. Appx. at 572 n.1; *O'Day*, 2015 WL 225467 at *3 n.2.   Plaintiff remarried on May 28, 2010.   Thus, to obtain widow's benefits, Plaintiff must establish that she was disabled beginning between March 23,

2009, the date she turned 50 years of age, and May 28, 2010, the date she remarried. The ALJ determined she was not disabled during this time period.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997).

The ALJ determined that Plaintiff suffers from: (1) depression; (2) kidney disease; (3) hypertension; (4) fibromyalgia; (5) asthma; (6) cervical degenerative disc disease; (7) hammertoes; and (8) degenerative changes of the left foot, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (PageID.31-34).  Again, Plaintiff was required to establish disability in the March 23, 2009, to May 28, 2010, time period.

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform light work subject to the following limitations: (1) she can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; (2) during an 8-hour workday, Plaintiff can sit and stand/walk for 6 hours each; (3) she can never crawl or climb ladders, ropes, or scaffolds; (4) she can occasionally stoop, crouch, kneel, balance, and climb ramps/stairs; (5) she cannot work in environments with extreme heat or cold; (6) she can tolerate occasional exposure to fumes, dusts, gases, odors, or poor ventilation; (7) she can frequently perform bilateral fingering and handling activities; (8) she cannot work at unprotected heights or with dangerous moving machinery; and (9) she is able to understand, remember, and apply information to perform simple tasks, make simple decisions, and adapt to routine changes in the workplace.   (PageID.34).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).

This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert. The vocational expert testified that there existed approximately 250,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.91-94). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

I.      **Medical Evidence**

In addition to Plaintiff's statements and hearing testimony, the administrative record contained copies of Plaintiff's medical treatment records. The ALJ described this evidence as follows:

> The record indicates the claimant has a long history of kidney problems, but during the period at issue, the objective evidence fails to document any significant findings. Additionally, her treatment was limited to medication management and monitoring. The record and her testimony indicate she eventually required a kidney transplant and cardiac surgery, but these events did not occur until after the period at issue (Ex. 5F; 8F-10F). She alleged having daily abdominal pain that at times was so severe she had to present to a hospital. There is very limited evidence pertaining to the claimant's treatment for her kidney problems during the period at issue. Specifically, there are no hospital records documenting emergent care for abdominal pain despite the claimant's allegations of constant daily pain. The record contains primary care treatment notes that generally address her chronic sinusitis and transient complaints (Ex. 15F/44-67; 15F/1-4, 68; 18F/16). There are no complaints of abdominal pain and the physical examinations are normal with regard to her abdomen. After the period at issue, the claimant even reported to one provider that she has not seen a nephrologist in many years (Ex. 15F/21). Given the extent of the claimant's allegations, one would think she would be referred to a specialist at some point. There are treatment notes from a nephrology specialist after the period at issue, but in October 2010, she is noted to be physically stable other than chronic proteinuria (Ex. 15F/41; 16F/1-2). She had a normal examination and her treatment was limited to obtaining laboratory results and an ultrasound for monitoring (Ex. 15F/42). At the subsequent visit, she reported feeling well and her provider noted that while she still had proteinuria, her creatinine was stable and there was no change to her medications (Ex. 15F/43). Imaging studies had shown some mild atrophy and a possible right adrenal mass, but subsequent records well after the prescribed period indicate her renal ultrasound was effectively unremarkable and her treatment was limited to monitoring (Ex. 2F/2-7). The light exertional level with only occasional postural movements and environmental restrictions with heights and machinery accommodates the claimant's fluctuations in symptoms and related pain.
>
> The record documents the claimant's diagnosis of fibromyalgia by rheumatologist J. Howard Uhi, MD, in August of 2010, after the period at issue, with the claimant reporting symptoms occurring for the past six months to several years (Ex. 14F/8-9). However, the record fails to contain evidence in support of her claim of extreme limitation leaving her unable to do anything or get out of bed for long stretches of time. The records pertaining to the period

at issue document generally normal physical findings including normal gait, normal strength, and only mild discomfort with range of motion testing. Additionally, during that initial visit with Dr. Uhl in August 2010, the examination revealed generally normal findings including full fist formation with normal grip and no swelling, tenderness, or limit with motion of the small joints of her hands, wrists, elbows, knees, ankles, or forefeet (Ex. 14F/11, 22). She had unremarkable sensory, motor, and reflex exams as well as full pain-free range of motion of her shoulders, lumbar spine, hips, knees, ankles, and forefeet. However, she had myofascial tender points in the usual distribution for fibromyalgia syndrome and moderate restriction with range of motion testing of her neck, which Dr. Uhi indicated might result in part due to degenerative changes of the cervical spine (Ex. 14F/8-11). The claimant has reported weather conditions affect her impairment and I have limited her exposure to extreme cold (Ex. 14F/22; Testimony). However, the generally normal examination findings and limited treatment during the period at issue is consistent with finding the claimant capable a light exertional level with occasional postural movements except no crawling and no climbing ladders, ropes, or scaffolds. This finding is consistent with Dr. Uhi's treatment recommendation that the claimant engage in a regular exercise program rather than limit her physical movements (Ex. 14F/23).

The record documents the imaging studies of the claimant's cervical spine showing mid to lower cervical spondyloarthropathy and mild to moderate findings on certain levels, but her treatment has been limited to a physical therapy referral and medication management (Ex. 14F/l 8). The record contains a note from the initial physical therapy evaluation in September 2010, after the period at issue, but fails to document the claimant's ongoing involvement with the treatment (Ex. 17F/1-6). She was discharged after failure to return for further physical therapy appointments, which suggests her pain was not as severe as alleged. Similarly, the record contains an x-ray of her left foot revealing degenerative osteoarthritic changes most pronounced in the forefoot with hammertoes suggested (Ex. 15F/4). However, she has received limited treatment during the period at issue and examinations reveal normal gait, sensory and motor function, and reflexes (Ex. 14F/11; 15F/42; 18F/16). I have accommodated the claimant's cervical spine impairment by limit[ing] her lifting, carrying, pushing, or pulling to a light exertional level to reduce the strain on her neck. Additionally, I have limited her fingering and handling to frequent given her reports of tingling and spasms into her hands from her neck pain. The occasional postural movements accommodates her foot pain as to reduce the frequency of pressure put on her feet during the performance of these movements.

The claimant has also alleged limitations due to hypertension and asthma. However, the treatment notes indicate her hypertension was well controlled with medication management and her asthma was stable with prescription inhalers (Ex. 2F/2; 15F/4, 7). Additionally, the claimant has had normal respiratory and

>cardiovascular exams during the period at issue (Ex. 2F/2; 14F/10; 15F/42, 46, 47, 53, 68; 16F/1). Her treating providers have strongly encouraged her to quit smoking as well (Ex. 15F/1, 22). Primary care treatment notes document her treatment for chronic sinusitis, but chest x-rays have been unremarkable and physical examinations reveal her lungs are clear to auscultation and no wheezing (Ex. 15F/1, 6, 68). I have included environmental restrictions to accommodate her asthma and hypertension impairment and limit the risk of exacerbation of symptoms.
>
>Regarding the claimant's depression, there have been few complaints related to the impairment during the period at issue. The claimant underwent a psychological consultative evaluation with Kathryn Pekrul, PhD, and Michael Hayes, PhD, in August 2015 and reported experiencing severe anxiety since her daughter died of a seizure in 2006 and her husband died in 2009 (Ex. 11F/3). Much of the report pertains to the claimant's mental functioning and activities of daily living at that time in August 2015 and provides little insight into the claimant's mental functioning prior to May 28, 2010.
>
>Primary care treatment notes dated February 9, 2009 indicate the claimant seems to be doing well with her husband's death and there was no recommended treatment for her grief reaction condition (Ex. 15F/67). During an August 2010 rheumatology visit, after the period at issue, the claimant had an elevated score on depression screening indicating moderate to marked depression although the provider noted she did not present with a depressed affect (Ex. 14F/8). Treating providers have noted she is pleasant and cooperative during visits and she has normal cognitive function and speech (Ex. 14F/10, 22; 15F/42). However, given her depressive screening results and grief reaction dealing with family deaths, I have limited the claimant to understanding, remembering, and applying information to perform simple tasks, make simple decisions, and adapt to routine changes in the workplace.

(PageID.35-37).

## II.     The ALJ's RFC Assessment is Supported by Substantial Evidence

At Step III of the sequential disability assessment process, the ALJ found that Plaintiff experienced "moderate limitation" with respect to concentration, persistence, and pace. (PageID.33). Plaintiff argues that she is entitled to relief because it constitutes error for an ALJ to find "moderate" restrictions with respect to concentration, persistence, and pace and then fail to incorporate such restrictions into the claimant's RFC.

The ALJ specifically found that Plaintiff was limited to work involving simple tasks, simple decisions, routine workplace changes. As the ALJ's discussion of the evidence reveals, these limitations sufficiently incorporate Plaintiff's limitations with respect to concentration, persistence, and pace. Plaintiff's argument is simply that the ALJ did not weigh the conflicting evidence as she prefers. This argument is unpersuasive. The ALJ is tasked with determining a claimant's RFC and is, therefore, "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004). This is precisely what the ALJ in this matter did and the ALJ's RFC assessment is supported by substantial evidence. Furthermore, Plaintiff's argument that a finding, at Step III, of moderate limitations in concentration, persistence, and pace requires the inclusion in an RFC, at Step IV, of certain specific limitations or restrictions has been rejected by the Sixth Circuit. *See, e.g., Kepke v. Commissioner of Social Security*, 636 Fed. Appx. 625, 635 (6th Cir., Jan. 12, 2016). The ALJ's RFC assessment is supported by substantial evidence. Accordingly, this argument is rejected.

**III.      The ALJ Properly Assessed Plaintiff's Subjective Allegations**

As noted above, the time period relevant to Plaintiff's claim for benefits is March 23, 2009, through May 28, 2010. With respect to this time period, Plaintiff testified at the administrative hearing that her ability to function was far more limited than the ALJ recognized. For example, Plaintiff testified that she experienced lower back pain that often prevented her from even getting out of bed. (PageID.75-76). Plaintiff testified that her fibromyalgia caused her to daily experience pain which rated from 7 to "ten plus" on a scale of 1-10. (PageID.76-78). Plaintiff also testified that she experienced numbness in her hands which caused her to "drop

-10-

things" on "a regular basis."  (PageID.79-80).  Plaintiff further testified that she "could not lift." (PageID.85).  The ALJ discounted Plaintiff's testimony, however, concluding that Plaintiff's subjective complaints were not entirely credible.  Plaintiff argues that she is entitled to relief because the ALJ's rationale for discounting her testimony is not supported by substantial evidence.As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability."  *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same).  As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled."  20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009).  Instead, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard.

First, it must be determined whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms.  *See* Titles II and XVI: Evaluation of Symptoms in Disability Claims, Social Security Ruling 16-3p, 2016 WL 1119029 at *3-4 (S.S.A., Mar. 16, 2016).  Next, the intensity and persistence of the claimant's symptoms are evaluated to determine the extent to which such limit his ability to perform work-related activities.  *Id.* at *4-9.[2]

---

[2] Social Security Ruling 16-3p rescinded Social Security Ruling 96-7p.  *Id.* at *1.  However, the adoption of this new Social Security Ruling did not alter the analysis for evaluating a claimant's subjective statements.  Instead, as the Social Security Administration stated, it was simply "eliminating the use of the term 'credibility' [so as to] clarify that that subjective symptom evaluation is not an examination of an individual's character."  *Ibid.*  As courts recognize, aside from this linguistic clarification, "[t]he analysis under SSR 16-3p otherwise is identical to that performed under SSR 96-7p."  *Young v. Berryhill*, 2018 WL 1914732 at *6 (W.D. Ky., Apr. 23, 2018).

As the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). As the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

Nevertheless, the ALJ is not permitted to make credibility determinations based upon "an intangible or intuitive notion about an individual's credibility." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007). Instead, the ALJ's rationale for discrediting

a claimant's testimony "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248. Accordingly, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Id.*

The ALJ articulated several reasons for discounting Plaintiff's testimony. Specifically, the ALJ stated:

> The claimant completed a function report and alleged significant limitation in her physical functioning (Ex. 4E). However, her allegations seem to largely revolve around her functioning at the time the reported was completed in June 2015, well after the prescribed period ended.
>
> At the hearing, the claimant alleged her kidney function fluctuated and caused daily symptoms including "horrible" abdominal pain, severe headaches, and muscle spasms. She alleged feeling very fatigued and unable to do anything. She asserted she had to take narcotics because she was unable to take anti-inflammatories, but the pain worsened and would make her vomit. The claimant alleged her pain would get so severe that she would have to go to the hospital. However, it is noted there are no hospital records from the period at issue documenting emergent care for pain symptoms. Regarding her fibromyalgia, the claimant alleged having severe spasms in her back, neck, legs, and hands as well as constant pain. She alleged her arthritis of her spine and neck resulted in limited motion and tingling in her hands. The claimant alleged using an inhaler on a regular basis and she was unable to be around smoke, strong chemicals, or severe cold. It is noted that during the period at issue, she was strongly encouraged to quit smoking (Ex. 15F/1, 52).

(PageID.35).

The ALJ further observed:

> In considering the claimant's allegations and reports, I concede the claimant's multiple physical impairments in combination with her depression impairment have clearly imposed some limitation on her functioning. However, the record as a whole fails to corroborate the

> claimant's reported degree of limitation from the severe impairments. The claimant's treating and examining providers observed relatively unremarkable clinical examination findings when compared to the frequency and severity of symptoms reported by the claimant. Moreover, the claimant has generally not received the type of medical treatment one would expect for a totally disabled individual. Specifically, the medical evidence establishes the claimant's symptoms have remained stable with treatment limited to conservative measures including medication management, monitoring, and physical therapy.

(PageID.35).

Plaintiff fails to identify any specific deficiency in the ALJ's rationale, but instead argues that the ALJ cannot legally discount her allegations unless the ALJ identifies an express conflict between her testimony and the evidence of record. As Defendant correctly notes, however, Plaintiff's argument misstates the legal standard. *See, e.g., Berens v. Commissioner of Social Security*, 2016 WL 4136524 at *5 (W.D. Mich., Aug. 4, 2016) (citations omitted). The ALJ assessed Plaintiff's subjective allegations pursuant to the proper standard and articulated good reasons, supported by substantial evidence, in support thereof. Again, Plaintiff's argument is essentially that the ALJ did not weigh the conflicting evidence as she prefers. Accordingly, this argument is rejected.

**IV.     The ALJ's Step Five Determination is Supported by Substantial Evidence**

At step five of the sequential process, the burden shifts to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See* 20 C.F.R. § 404.1566; 42 U.S.C. § 423(d)(2)(A). The Commissioner satisfies this requirement by demonstrating that there

exists a significant number of jobs either: (1) in the region where the claimant resides, or (2) in multiple other regions of the country.  *See* 20 C.F.R. § 404.1566; 42 U.S.C. § 423(d)(2)(A).

At the administrative hearing, the vocational expert testified as to the number of jobs that existed in the national economy which Plaintiff could perform despite her limitations. (PageID.91-94).  The vocational expert did not testify as to the number of jobs which existed in the region where Plaintiff resides.  The vocational expert likewise did not testify whether the jobs which she identified in the national economy existed in more than one region of the United States. Plaintiff argues that the ALJ's failure to establish whether the jobs in question existed in the region where she resides or in multiple other regions entitles him to relief.

As noted above, the Sixth Circuit has held that "[s]ix thousand jobs in the United States" satisfies the Commissioner's requirement to identify a significant number of jobs in the national economy which a claimant can perform.  In this matter, the vocational expert testified that there existed approximately 250,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding.  Given that the vocational expert identified such a large number of jobs, it was reasonable for the ALJ "to infer that such jobs exist in several regions."  *Vining v. Astrue*, 720 F.Supp.2d 126, 128 (D.Maine 2010) (expressly rejecting the argument that claimant was entitled to relief because the ALJ failed to specify whether the 10,000 jobs identified by the vocational expert existed in the region of claimant's residence or multiple regions).  This argument is, therefore, rejected.  Furthermore, Plaintiff has waived this issue by failing to raise such at the administrative hearing.  *See, e.g., Hunt v. Commissioner of Social Security*, 2014 WL 345660 at *7 (W.D. Mich., Jan. 30, 2014).

## **CONCLUSION**

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: October 4, 2019

 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge